UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. Case No.: 07-267 (RMC) |
| v. | Sentencing: January 18, 2008 |
| FABIO ENRIQUE GARCIA MONTES, et al. | -- UNDER SEAL -- |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**COMES NOW DEFENDANT, Fabio Gracia Montes,** through undersigned counsel, and respectfully submits this memorandum in aid of sentencing. Mr. Gracia asks the Court for mitigation at sentencing; the mitigation is appropriate in light of his age and the nature of his past and future incarceration. Further sentence mitigation is also appropriate when statutory factors are considered. For these reasons as well as other reasons to be discussed at the sentencing hearing, Mr. Gracia respectfully asks for the Court's consideration.

### Significant Dates For Consideration

Mr. Gracia has been detained as a result of his conduct since June 13, 2003. The following is a breakdown of significant dates:

| | |
|---|---|
| June 13, 2003 | – Arrest and Detention in Colombia |
| October 21, 2004 | – Indicted in Present Case |
| September 5, 2006 | – Transferred to Combita Prison |
| July 22, 2007 | – Transported and Held w/out Bond in Washington, D.C. |
| October 11, 2007 | – Enters Plea of Guilty |

At the time of sentencing, Mr. Gracia will have been incarcerated for 55 months and 7 days. The incarceration began under Colombian law and morphed into detention pending extradition to the United States. Mr. Gracia respectfully asks this Court for recognition, in mitigation, of the time he has served incarcerated.

**§3553 (a) Factors**

The factors this Court must consider under §3553 (a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code;
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994 (a)(2) that is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Mr. Gracia submits that an analysis of the factors yields mitigation for any sentence under consideration.

**Inhumane Imprisonment At Colombia's "SuperMax" Prison**

Mr. Gracia requests mitigation because he endured inhumane conditions in Colombia pending his extradition to the United States. Pending extradition, Mr. Gracia was incarcerated at the Combita Prison, a supermax prison in the city of Tunja, Boyaca Department in the Republic of Colombia. The prison is about three hours north of Bogota and sits on a high 11,000-foot

plain. At Combita, the extraordinary conditions ranged from extreme climate exposure to deprivation of basic human rights as well as legal rights.

The United States Department of State found Colombia's prison system overcrowded and poorly funded, with under trained and corrupt officials and employees. *Country Reports on Human Rights Practices - 2005,* U.S. Department of State, Bureau of Democracy, Human Rights, and Labor (March 8, 2006).[1] The Combita Prison was specifically singled-out recently because of a lack of money to pay sanitation fees, a matter that led to water rationing for inmates during the period of time Mr. Gracia was detained at the prison. *Id.*

Amnesty International also reported about the inhumane conditions at Combita Prison. *See* Amnesty Int'l, Amnesty International's Briefing to the UN Committee against Torture on the Republic of Colombia (2003) (http://web.amnesty.org/library/print/engamr 230662003). The

---

[1] Below is an excerpt from the State Department Report:

> The National Prison Institute (INPEC) runs the country's [Colombia's] 139 national prisons and is responsible for inspecting municipal jails. Although part of the Ministry of Interior and Justice, INPEC has an independent budget and administrative decentralization. With the exception of new facilities, prison conditions were poor, particularly for prisoners without significant outside support.
>
> Many of INPEC's 8,757 prison guards and administrative staff were poorly trained or corrupt. Overcrowding, insecurity, corruption, and an insufficient budget continued to be serious problems. As of March there were more than 69 thousand prisoners held in spaces designed to accommodate fewer than 50 thousand, an overcrowding rate of nearly 40 percent. In 13 institutions overcrowding exceeded 100 percent, and in Bucaramanga's penitentiary, where more than 2 thousand prisoners lived in a space designed for 664, the rate surpassed 200 percent. INPEC representatives estimated that nine thousand guards would be needed to provide adequate security. The Committee in Solidarity with Political Prisoners (CSPP) noted a decrease in corruption resulting from improved training, increased supervision, and more accountability for prison guards.
>
> Budget problems affected prisons in many ways. At Combita Prison lack of money to pay sanitation fees led to water rationing. During the year INPEC spent approximately $2 (4,990 pesos) per day on each inmate for food. Private sources continued to supplement many prisoners' food. CSPP reported that the doctor to patient ratio was as low as 1 to 1,200 in some institutions and noted that INPEC failed to negotiate a nationwide healthcare contract for all its facilities.
>
> Authorities sometimes failed to prevent deadly violence among inmates. INPEC reported that from January to June, there were 20 violent deaths among inmates related to fighting and riots. In March a fight between inmates at Villahermosa jail in Cali resulted in two deaths. During this period there were 56 escapes, including 44 because of security failures and 1 with the aid of outside assistance.

*Id.*

*Amnesty* report noted that prisoners "have been left exposed for long periods of time to the sun and rain," are forced to "shower in the open air and left outside for periods of about an hour without being able to dry themselves or dress," and have "reportedly been given rotten food or food which appears to have been contaminated." *Id.*

Mr. Gracia asserts that his inhumane pre-sentence confinement merits the Court's consideration at sentencing. *See United States v. Carty*, 264 F.3d 191, 196 (2d Cir.2001) (The court ruled "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures…" Sentence was vacated and remanded for reconsideration in light of conditions of pre-sentence detention in Dominican Republic)[2]; *United States v. Mateo*, 299 F.Supp.2d 201, 212 (S.D.N.Y.2004) (A downward departure was granted where pre-sentence conditions "effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines."); *United States v. Fajardo*, Slip Op. 3498640, pp.3-4 (S.D.N.Y., Dec. 5, 2006) (The court ruled that a downward departure was not available given a mandatory minimum, however the court did take note of the conditions of pre-sentence detention.).

Consideration of pre-sentence confinement is also appropriate under 18 U.S.C. § 3553(a). Specifically, the court must also give due consideration to the remaining factors identified in 18

---

[2] The decision in *Carty* states in relevant part:

> According to the Sentencing Guideline Manual, a sentencing court may depart if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). No evidence exists to show that the Sentencing Commission took the conditions of a pre-sentence detainee's confinement into account in creating the Guidelines. Indeed, there is no indication that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities other than federal facilities. *See United States v. Francis*, 129 F.Supp.2d 612, 616 (S.D.N.Y.2001). Accordingly, we hold today that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures.

*Carty,* at 196.

U.S.C. § 3553(a), in order to impose a sentence "sufficient, but not greater than necessary," as required by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 2005). *See also, United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005). Any sentence imposed by this Court would be greater, given the detention conditions, than one imposed for a defendant incarcerated solely in this country.

## Documents In Support

Mr. Gracia has offered some documents for consideration, in order they are:

1. Letter from the leader of the Diocese of Yopal wherein he identifies Mr. Gracia as an "amicable" and "well principled" man both morally and as a Christian.
2. Letter from the Agricultural Secretary of the City of Aguazul wherein he identifies Mr. Gracia as "an honorable person, responsible and also with good interpersonal relations." The Secretary notes he has known Mr. Gracia since he was 15 years old.
3. Letter from the President and Secretary of the community of "Barrio Sevilla" wherein they identify Mr. Gracia as a 20-year resident that has demonstrated "excellent conduct."
4. Letter from the Comptroller of the Montecarlo rice company wherein he confirms that Mr. Gracia has maintained a business relationship with the company through the year 2002 and was provided credit in the amount of $10,000,000.00 Colombian Pesos.
5. Two of many receipts that show Mr. Gracia's purchase of fuel and oil for his plane used to spray crops.

**WHEREFORE,** Mr. Gracia asks the Court for consideration of the issues and arguments above.

Respectfully submitted,

**RETURETA & WASSEM, P.L.L.C.**

By: _____/s/_____
Manuel J. Retureta, Esq.
District of Columbia Bar #430006
601 Pennsylvania Avenue, NW
South Building – Suite 900
Washington, D.C. 20004
(202) 220-3073

5

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the foregoing pleading was served on all parties via the Court's Electronic Case Filing system on January 15, 2008.

                                            /s/
                                  Manuel J. Retureta, Esq.

Case 1:07-cr-00267-RMC     Document 8     Filed 01/15/2008     Page 7 of 7



**DIÓCESIS DE YOPAL**
CASANARE

PARROQUIA NUESTRA SEÑORA DEL CARMEN
AGUAZUL CASANARE
CALLE 10 N° 17 – 44
NIT. 844.004-835-3

CERTIFICACIÓN

Por la presente el suscrito Párroco certifica que el señor FABIO GRACIA, IDENTIFICADO C.C. No. 17.172.656 de Bogotá de profesión Capitán de Aviación, Él es un colaborador y allegado a esta Parroquia, se destaca por su amabilidad y por sus buenos principios morales y cristianos según lo testifica el antiguo Párroco.

En constancia se firma en Aguazul a diecinueve de agosto del dos mil cuatro.



Pbro. Hernando López
Párroco

Parroquia Ntra. Sra del Carmen Aguazul - Casanare. Calle 10 No. 17-44 Tels.: 638 20 09 - 638 35 10

## LA SECRETARIA DE AGRICULTURA, GANADERIA Y MEDIO AMBIENTE DEL MUNICIPIO DE AGUAZUL

## CERTIFICA

Que el señor FABIO GRACIA, quien se identifica con la cédula de ciudadanía número 17.172.656 de Bogotá, es una persona honorable, responsable y que además maneja buenas relaciones interpersonales.

Lo anterior puedo certificarlo ya que he mantenido relación de amistad con el mencionado Señor desde hace 15 años.

La presente se expide en el municipio de Aguazul, Casanare a los veinticuatro (24) días del mes de Agosto de dos mil cuatro (2004)

LUIS FRANCISCO CASTILLO SUESCUN
C.C. # 9.396.090 DE SOGAMOSO
GERENTE FINANCIERO



*República de Colombia*
*Departamento de Casanare*
*Municipio de Aguazul*

Personería Jurídica No. 000974 de Abril de 1984

## Junta de Acción Comunal Barrio Sevilla

N° 230

### CERTIFICA:

Que el señor FABIO GRACIA, identificado con C.C. 17.172.656 de Bogotá, Capitán de FASCA, quien vivió en este barrio desde hace 20 años, quien durante todo este tiempo ha demostrado una excelente conducta.

La presente se expide en Aguazul a los 3 días del mes de Agosto de 2004.

**JAVIER BARBOSA ZABALA**
Presidente
C.C. 13.513.032 B/manga

**LINDA ANDRE T. PINZON**
Secretaria
C.C. 53646763 Aguazul

*"Solo cuando estemos unidos, estaremos verdaderamente preparados individualmente para afrontar las situaciones difíciles"*

 

# EL DEPARTAMENTO DE CONTABILIDAD DE LA PROCESADORA DE ARROZ MONTECARLO LTDA

## CERTIFICA QUE

El señor **FABIO GRACIA MONTES**, identificado con la cedula de ciudadanía numero 17.172.656, expedida en Bogota ha mantenido relaciones comerciales con nuestra compañía y durante el año 2.002, se le concedieron créditos hasta la suma de $ 10.000.000.00.

La presente certificación se expide a solicitud del interesado a los cuatro (4) días del mes de agosto del 2.003.

Cordialmente,

**FERNANDO BAQUERO CORTES**
Contador

Kilómetro 4 vía Acacías • Teléfonos: 670 81 39 - 670 89 86 • Fax: 670 88 66
E-mail: arrozmontecarlo@hotmail.com • VILLAVICENCIO - META

## ESTACION DE SERVICIO "VILLA DEL RIO"
PEÑARANDA Y RODRIGUEZ LTDA.
NIT: 844.002.642-1 • REGIMEN COMUN
KM 0 VIA AGUAZUL - TAURAMENA • TEL: (098) 638 43 55

**FACTURA DE VENTA N° 12676**

Fecha: febrero 6 de 2003
Señor: Fabio Gracia                    C.C.
Clase de Vehículo: Toyota              Placas N°: 365 42

| CANT. | DESCRIPCIÓN | VALOR |
|---|---|---|
| 7 8/10 | GASOLINA MOTOR | 30 000 |
|  | GASOLINA EXTRA |  |
|  | A.C.P.M. |  |
|  | ACEITES |  |
|  | OTROS |  |
|  | TOTAL $ | 30 000 |

Aceptado: [signature]    Vendedor: [signature]
C.C./NIT:    EL SUSCRITO

Resolución DIAN N° 44000003770 · DE MARZO 22 DE 2002 · Del 5001 Al 15000
ULNEZ Impresores, Pedro E. Jiménez C. · NIT: 9.523.553-9
*Gracias por su Compra*

---

EL SUSCRITO NOTARIO VEINTIUNO (E)
DEL CIRCULO DE CALI
CERTIFICA
QUE LA PRESENTE FOTOCOPIA CORRESPONDE
AL ORIGINAL DEL DOCUMENTO QUE HE TENIDO
A LA VISTA PARA LA CONFRONTACION
Santiago de Cali, 14 JUL 2006

NOTARIA VEINTIUNA
Patricia Castillón Jaramillo
NOTARIA ENCARGADA

---

## ESTACION DE SERVICIO "VILLA DEL RIO"
PEÑARANDA Y RODRIGUEZ LTDA.
NIT: 844.002.642-1 • REGIMEN COMUN
KM 0 VIA AGUAZUL - TAURAMENA • TEL: (098) 638 43 55

**FACTURA DE VENTA N° 12840**

Fecha: _____ de 200_
Señor: Fabio Gracia                    C.C.
Clase de Vehículo: Toyota              Placas N°: 368 42

| CANT. | DESCRIPCIÓN | VALOR |
|---|---|---|
| 6 8/10 | GASOLINA MOTOR | 26 100 |
|  | GASOLINA EXTRA |  |
|  | A.C.P.M. |  |
| 70 mg | ACEITES 2 1/4 esteccia | 30 000 / 9 000 |
|  | OTROS |  |
|  | TOTAL $ | 65 100 |

Aceptado: [signature]    Vendedor: [signature]

Resolución DIAN N° 44000003770 · DE MARZO 22 DE 2002 · Del 5001 Al 15000
ULNEZ Impresores, Pedro E. Jiménez C. · NIT: 9.523.553-9
*Gracias por su Compra*